IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| TK ELEVATOR CORPORATION, *f/k/a* THYSSENKRUPP ELEVATOR CORPORATION <br> *Plaintiff,* <br> v. <br><br> NICHOLE DRZEWIECKI, *et al.*, <br><br> *Defendants.* | * <br> * <br> * <br> * <br> Civil Action No. RDB-25-0744 <br> * <br> * <br> * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM ORDER

This action arises out of allegations that Defendant Nichole Drzewiecki ("Individual Defendant" or "Drzewiecki"), a former employee of Plaintiff TK Elevator Corporation ("TKE" or "Plaintiff"), downloaded information related to TKE's business practices and provided it to her new employer, Defendant Nouveau Elevator DC ("Entity Defendant" or "Nouveau"), in violation of her employment agreement. (ECF No. 1; ECF No. 2-1 at 3.) On March 6, 2025, TKE initiated this action by filing a seven-Count, partially verified Complaint (ECF No. 1) in this Court based on 28 U.S.C. §§ 1331, 1332, and 1367. (ECF No. 1.) In its Complaint, TKE alleges breach of contract against Drzewiecki (Count I); violation of the Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq.*, against both Defendants (Count II); violation of the Maryland Uniform Trade Secrets Act, MD. CODE ANN. COM. LAW § 11-1201, *et seq.*, against both Defendants (Count III); temporary, preliminary, and permanent injunction against all Defendants (Count IV); tortious interference with contractual relations against Nouveau (Count V); tortious interference with prospective business against both Defendants (Count VI); and unfair competition against both Defendants (Count VII). *See* (ECF No. 1.)

1

Currently pending before this Court is TKE's Motion for Temporary Restraining Order ("Plaintiff's Motion") (ECF No. 2), filed against both Defendants on March 6, 2025. Defendants responded in Opposition (ECF No. 10), and the Court heard oral argument from both parties on the record at a hearing on March 10, 2025. For the reasons set forth on the record at the hearing and explained further below, Plaintiff's Motion is DENIED in full as to Defendant Nouveau, and DENIED as to Defendant Drzewiecki except to the extent that Drzewiecki is ORDERED to return all information that she allegedly took that falls within the ambit of her employment Agreement with TKE by 5:00 PM on Monday, March 17, 2025.[1]

## BACKGROUND

Plaintiff TK Elevator Corporation ("TKE" or "Plaintiff") is "a leading domestic player in the elevators and escalators market, with close to 10,000 U.S. employees." (ECF No. 1 ¶ 16.) TKE installs, modernizes, repairs, and maintains elevators for residential and commercial buildings, escalators and moving walks, and other urban mobility solutions across the United States. (*Id.* ¶ 17, 18.) TKE devotes significant resources to preserving its Trade Secrets and Confidential Information, which it protects by using password-protected, secure cloud-based systems, networks and computers; limiting access to its secure system to authorized individuals and employees on a need-to-know basis; and maintaining confidentiality agreements. (*Id.* ¶ 19–25.)

---

[1] As the Court noted on the record, this Memorandum Order does not constitute a temporary restraining order, but rather a form of injunctive relief. As explained further below, the Court is satisfied that injunctive relief in the form explained on the record is appropriate as to Plaintiff's breach of contract claim (Count I) against Drzewiecki. As such, unlike a temporary restraining order, this Memorandum Order and the injunctive relief it contemplates regarding Drzewiecki will *not* automatically be subject to further argument regarding an extension or permanent injunction.

Between 2021 and her resignation on January 17, 2024, Defendant Nichole Drzewiecki ("Individual Defendant" or "Drzewiecki") worked as a Service/Repair Sales Representative in TKE's office in College, Park Maryland. (*Id.* ¶ 27.) In this client-facing, sales role, Drzewiecki developed and maintained TKE's goodwill and customer relationships throughout Southern Maryland, Northern Virginia, and Washington D.C. (*Id.*) TKE provided Drzewiecki with confidential proprietary information such as customer lists, customer service histories and contract terms, sales techniques, pricing information, strategic planning information, and information on key personnel prospects. (*Id.*) In return, TKE required her to sign a Confidentiality, Non-Recruiting, Non-Solicitation Agreement ("Agreement") on August 19, 2021. (*Id.*; ECF No. 1-1.) This Agreement included several restrictive covenants that Drzewiecki would maintain confidential information, would not solicit business from TKE customers with whom she had worked for two years after the termination of her employment with TKE, and would agree to waive any bond for injunctive relief granted based on an alleged violation of the Agreement. *See* (ECF No. 1-1 §§ 3, 4, 2(a), 2(b), 5, 10, 11.)

On January 17, 2024, Drzewiecki resigned from TKE and, sometime thereafter, began to work in a sales position at TKE's direct competitor, Defendant Nouveau Elevator DC ("Entity Defendant" or "Nouveau"). (ECF No. 1 ¶ 38.) In August 2024, TKE hired a forensic consultant, Michael Kunkel ("Kunkel"), who reviewed Drzewiecki's TKE computer and discovered that she had downloaded several files onto a SanDisk Drive on December 11, 2023, and several files onto a UDisk Drive on January 10, 2024. (*Id.* ¶ 39; ECF No. 8.) The files allegedly included information such as TKE's hourly rate information; estimate and survey templates; bidding documents; and capital planners and service and repair proposals booking

3

documents. (ECF No. 1 ¶ 42.) Some of these files related to TKE's former clients, McPherson and Waterview, both of whom now conduct their elevator- and escalator-related business with Nouveau. (*Id.* ¶¶ 46, 47.)

In October 2024, TKE sent Nouveau and Drzewiecki a letter requesting that they return all information that Drzewiecki had taken from TKE because her actions violated the terms of her Agreement. (ECF No. 1 ¶ 51.) After receiving no response, TKE sent another letter to Drzewiecki and Nouveau dated December 18, 2024, again seeking return of the information. (ECF No. 10-1.) On March 6, 2025, TKE initiated the instant action against Drzewiecki and Nouveau and filed its Motion for a Temporary Restraining Order (ECF No. 2.) Defendants responded in Opposition (ECF No. 10), and the Court heard oral argument from the parties at a hearing held on the record on March 10, 2025. The pending Motion is ripe for review.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 65 authorizes federal courts to issue temporary restraining orders and preliminary injunctions. Both are " 'extraordinary remedies involving the exercise of [a] very far-reaching power to be granted only sparingly and in limited circumstances.'" *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 816 (4th Cir. 1992)). To obtain a temporary restraining order, the movant must satisfy the test set forth by the Supreme Court in Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008), which requires a showing that:

(1) the movant is likely to succeed on the merits;
(2) the movant is likely to suffer irreparable harm absent preliminary relief;

      (3) the balance of equities favors the movant; and
      (4) an injunction is in the public interest.

555 U.S. at 20. Courts within the jurisdiction of the Fourth Circuit require that each of these factors be "satisfied as articulated." *Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013) (citation omitted). Thus, a court need not address all four *Winter* factors if one or more factors is not satisfied. *Henderson ex rel. NLRB v. Bluefield Hosp. Co., LLC*, 902 F.3d 432, 439 (4th Cir. 2018).

The plaintiff "bears the burden of establishing that each of these factors supports granting the injunction." *Direx*, 952 F.2d at 812 (citation omitted). As the U.S. Court of Appeals for the Fourth Circuit explained in *Mahmoud v. McKnight*, 102 F.4th 191 (4th Cir. 2024),

> "A party ... is not required to prove his case in full at a preliminary-injunction hearing," and the process ordinarily entails procedures "that are less formal and [considered upon] evidence that is less complete than in a trial on the merits." Despite considering the case at the early stages of the proceedings, to make the requisite showings, a plaintiff seeking a preliminary injunction generally cannot rely on mere allegations in the complaint but must come forward with some evidence showing a likelihood of success on the merits.

*Id.* at 203 (citations omitted).

## ANALYSIS

In its Motion, Plaintiff addresses the *Winter* factors only as to its first three counts: breach of contract against Drzewiecki (Count I); violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §1831, *et seq.* as to both Defendants (Count II); and violation of the Maryland Uniform Trade Secrets Act ("MUTSA"), MD. CODE ANN., COM. LAW § 11-1201, *et seq.* as to both Defendants (Count III). (ECF No. 2-1.) Plaintiff does not raise arguments as to its remaining four counts, and Defendants' Opposition only addresses Plaintiff's arguments as to Counts I, II, and III. (ECF No. 10.) Accordingly, the Court analyzes the *Winter* factors as to Counts I, II, and III in turn.

5

### A. Likelihood of Success on the Merits

To obtain injunctive relief, the movant bears the burden to show that it is likely to succeed on one of its claims. *Profiles, Inc. v. Bank of Am. Corp.*, 453 F. Supp. 2d 742, 747 (D. Md. 2020). As noted above, movants are not required to prove their case in full at a preliminary injunction hearing, *Mahmoud v. McKnight*, 102 F.4th 191, 203 (4th Cir. 2024) (quoting *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)), and the process entails procedures "'that are less formal and [considered upon] evidence that is less complete than in a trial on the merits.'" *Id.* Nevertheless, a plaintiff seeking a preliminary injunction generally cannot rely on mere allegations in the complaint but must come forward with some evidence showing a likelihood of success on the merits. *Id.* (citing *Winter*, 555 U.S. at 20–21).

#### 1. Breach of Contract Claim as to Drzewiecki (Count I)

For the reasons explained on the record and supplemented below, Plaintiff has established a likelihood of success on the merits as to the breach of contract claims against Drzewiecki. To state a claim for breach of contract under Maryland law, a plaintiff must prove "a contractual obligation, breach, and damages." *Parkway 1046, LLC v. U.S. Home Corp.*, 961 F.3d 301, 307 (4th Cir. 2020) (quoting *Kumar v. Dhanda*, 17 A.3d 744, 749 (Md. Ct. Spec. App. 2011)). Formation of a valid contractual obligation requires mutual assent (an offer and acceptance), an agreement definite in its terms, and sufficient consideration. *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 777 (4th Cir. 2013). To enforce a restrictive covenant in Maryland, an employer must show that (1) the employer has a legally protected interest; (2) the covenant is no wider in scope and duration than reasonably necessary to protect the employer's interest; (3) the covenant does not impose undue hardship on the employee; and

6

(4) the covenant does not violate public policy. *Deutsche Post Global Mail Ltd v. Conrad*, 116 F. App'x 435, 438 (4th Cir. 2016) (citing *Silver v. Goldberger*, 188 A. 2d 155, 158 (1963)). Here, Plaintiff has established these elements.

It is undisputed that Drzewiecki signed the Agreement and Plaintiff incorporated the Agreement in full into its Complaint. *See* (ECF No. 1-1.) By its plain language, Drzewiecki's employment Agreement provided that she would "not use, publish, or disclose [TKE's] Trade Secrets and/or Confidential Information during and after termination of employment," and that Trade Secrets and Confidential Information included, *inter alia*, "customer lists, prospective customer lists, product and service pricing information, revenues from customer accounts, purchasing habits and patterns of [TKE] customers, contract terms, contact information, contract expiration dates, and customer proposals . . . ." (ECF No. 1-1 §§ 2(a), 2(b), 4.) It also included a covenant not to solicit customers with whom Drzewiecki had worked at TKE for two years "following the termination of" her employment at TKE. (*Id.* § 5.) As explained on the record, therefore, the Agreement established a legally protected interest in customer information defined that it defined as Trade Secrets and Confidential Information.

The confidentiality and non-solicitation covenants in the Agreement were no wider in scope and duration than reasonably necessary to protect TKE's interest. Although the non-solicitation agreement did not have a geographic limitation, it was limited to customers with whom Drzewiecki had contact as a TKE employee and lasted only two years after the termination of her employment at TKE. *See Gill v. Computer Equipment Corp.*, 292 A.2d 54 (Md. 1972) (reasonable where non-compete limited to two-year duration and applied only to

7

working for manufacturer represented by former employer in 1 year immediately preceding termination0; *Tuttle v. Riggs-Warfield-Roloson*, 246 A.2d 588 (Md. 1968) (reasonable where limited in duration to two years and applied only to customers of prior employer); *see generally Hebb v. Stump, Harvey & Cook, Inc.*, 334 A.2d 563 (App. Ct. Md. 1975). The confidentiality agreement was similarly reasonable because it was limited to use of the information that TKE defined as confidential within the Agreement. The absence of a geographic limitation in either covenant further emphasizes that it did not impose undue hardship on Drzewiecki. Finally, Maryland courts have held that the enforcement of reasonable restrictive covenants serves the public interest. *See, e.g.*, *Intelus Corp. v. Barton*, 7 F. Supp. 2d 635, 642 (D. Md. 1998).

Finally, Plaintiff's verified Complaint (ECF No. 1) establishes that she downloaded customer lists, and other information related to customers that likely falls within the ambit of the Agreement, and Defendants do not dispute that Drzewiecki downloaded information that she had worked on in December 2023, *see* (ECF No. 10 at 9). Plaintiff established that (1) the information of at least one client—McPherson—was very likely contained in that download, and (2) McPherson ended its business relationship with TKE and became a client of Nouveau within a year of Drzewiecki's departure from TKE. This is sufficient to establish a likelihood of success on the merits of a breach of contract claim alleged against Drzewiecki.

### 2. Misappropriation Claims (Counts II, III)

The standards for misappropriation of trade secrets under MUTSA and DTSA are nearly identical. Under both, a plaintiff must show (1) that the documents at issue are trade secrets and (2) that the defendant misappropriated those trade secrets. *See* 18 U.S.C. §§ 1836(b)(1), 1839(3), 1839(5); MD. CODE, COM. LAW § 11-1201(c); *Trandes Corp. v. Guy F.*

*Atkinson Co.*, 996 F.2d 655, 660 (4th Cir. 1993) (holding that for misappropriation under MUTSA, plaintiff must allege "(1) it possessed a valid trade secret, (2) that the defendant acquired its trade secret, and (3) that the defendant knew or should have known that the trade secret was acquired by improper means"). Under the DTSA, however, a plaintiff must make the additional showing that the trade secret "is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1).

The DTSA and the MUTSA define a trade secret in "substantially the same manner." *Md. Physician's Edge, LLC v. Behram*, Civ. No. DKC-17-2756, 2019 WL 4573417, at *5 (D. Md. Sept. 20, 2019); *see also Philips N. Am. LLC v. Hayes*, Civ. No. ELH-20-1409, 2020 WL 5407796, at *7 (D. Md. Sept. 9, 2020). Both statutes require that (1) the information derive economic value from being not readily ascertainable and (2) that the owner of the purported trade secret employ reasonable measures to keep the information secret. *Id.*; *see* MD. CODE COM. LAW § 11-1201(e); *see also Brightview Grp., LP v. Teeters*, 441 F. Supp. 3d 115, 129 (D. Md. 2020).

Plaintiff fails to demonstrate a likelihood of success on the merits under either MUTSA or DTSA because Plaintiff has not established that the information at issue includes trade secrets. TKE has not provided any detail regarding the information contained in the files Drzewiecki allegedly downloaded in December 2023 and January 2024. As such, this Court is unable to make any finding regarding whether that information included trade secrets as defined in MUTSA or DTSA. Accordingly, TKE has failed to establish a likelihood of success on the merits as to Counts II and III. Because these are the only Counts mentioned in Plaintiff's Motion that are alleged against Nouveau, Plaintiff's Motion must be DENIED as

to Nouveau. Plaintiff established a likelihood of success on the merits as to Drzewiecki based on Count I, however, and the Court continues the *Winter* analysis as to Drzewiecki only.

### B.  Likelihood of Irreparable Harm to Plaintiff Absent Preliminary Relief

A plaintiff seeking a preliminary injunction "must demonstrate more than just a 'possibility' of irreparable harm." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017) (quoting *Pashby v. Delia*, 709 F.3d 307, 321 (4th Cir. 2013)). Irreparable harm must be "actual and imminent," not "remote or speculative." *Id.* (quoting *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F2d 802, 812 (4th Cir. 1991)). "Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough" to justify a preliminary injunction. *Id.* (quoting *Sampson v. Murray*, 415 U.S. 61, 90 (1974)) (internal punctuation omitted). "The possibility that adequate compensatory or other corrective relief will be available at a later date . . . weighs heavily against a claim of irreparable harm." *Id.* Delay in filing for injunctive relief may weigh against a claim of irreparable harm. *Potomac Heritage Trail Ass'n, Inc. v. U.S. Dep't of Transpo.*, Civ. No. DLB-22-2482, 2022 WL 7051160, at *18 (D. Md. Oct. 11, 2022). "Even if 'a particular period of delay may not rise to the level of laches . . . it may still indicate an absence of the kind of irreparable harm required to support a preliminary injunction [or TRO]." *Id.* (quoting *Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*, 872 F.2d 75, 80 (4th Cir. 1989)); *Quince Orchard*, 872 F.2d at 79 (denying preliminary injunction where plaintiff waited nine months before filing suit).

In this case, TKE waited seventy-eight days between discovering Drzewiecki's alleged download activity and filing the instant Motion. Even so, TKE has made a strong showing that Drzewiecki downloaded information related to McPherson and potentially other

10

customers in direct violation of the terms of her employment Agreement. TKE has already lost McPherson as customer, but the threat that Drzewiecki will use the customer information she downloaded remains while she retains possession of that information. Thus, as explained on the record, there is a risk of irreparable harm in the form of future misappropriation of the information Drzewiecki downloaded. TKE meets this factor as to Count I.

### C.  The Remaining *Winter* Factors

Considering the balance of the equities in the third *Winter* factor, this Court must balance the "harm to the plaintiff if the injunction is erroneously denied versus harm to the defendant if the injunction is erroneously granted." *Planned Parenthood of Ind. & Ky., Inc. v. Adams*, 937 F.3d 973, 980 (7th Cir. 2019); *see Porretti v. Dzurenda*, 11 F.4th 1037, 1050 (9th Cir. 2021); *see Adams & Boyle, P.C. v. Slatery*, 956 F.3d 913, 923 (6th Cir. 2020). As to Count I, the balance of the equities favors TKE to the extent that the injunctive relief orders the return of the information Drzewiecki downloaded onto the SanDisk Drive and UDisk drive in December 2023 and January 2024. Under the terms of the Agreement, Drzewiecki should not have taken the information in the first place. To the extent that looking through various copies could pose an undue hardship to Drzewiecki, the Court limits its ruling to only requiring Drzewiecki to return the information that she downloaded and does not at this time require her to return copies she may have made.

Finally, under the fourth *Winter* factor, the public interest favors the enforcement of reasonable restrictive covenants, as they "can play an important role in the growth of a business that depends upon the development of good will through effective customer service." *Intelus Corp. v. Barton*, 7 F. Supp. 2d 635, 642 (D. Md. 1998); *see also ClearOne Advantage, LLC v.*

11

*Kersen*, 710 F. Supp. 3d 425, 438 (D. Md. 2024) ("[C]ountervailing public interests in fostering robust competition . . . are outweighed when, . . . [one party is] engaging not in free competition and enterprise but are instead profiting off of misappropriated confidential customer data in violation of their contractual obligations and trade secrets laws."). Even so, "[s]ince preliminary injunctions are intended to preserve the status quo during the pendency of litigation, injunctions that 'alter rather than preserve the status quo' are disfavored." *Brightview Grp., LP v. Teeters*, 441 F. Supp. 3d 115, 128 (D. Md. 2020) (quoting *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land*, 915 F.3d 197, 216 n.8 (4th Cir. 2019)). In this case, injunctive relief enforcing the terms of the reasonable Agreement and returning the status quo under that Agreement by requiring Drzewiecki to return the information that she downloaded favors the public interest. As explained on the record at the hearing, TKE has sufficiently shown that Drzewiecki likely improperly downloaded information within the ambit of the employment Agreement, and she should be required to return that information.

As the Court explained on the record, the return of information is not a temporary restraining order but rather constitutes more general injunctive relief contemplated under Rule 65. For this reason, the Court reiterates its explanation on the record that, unlike a temporary restraining order, the injunctive relief in this Memorandum Order will *not* be subject to automatic review for extension or a permanent injunction after March 17, 2025.

## CONCLUSION

For the reasons stated above and on the record at this Court's March 10, 2025, hearing, it is hereby ORDERED that:

1. Plaintiff's Motion (ECF No. 2) is DENIED as to Defendant Nouveau;

2. Plaintiff's Motion (ECF No. 2) is DENIED IN PART as to Defendant Drzewiecki. Specifically, the Court DENIES a temporary restraining order as to Drzewiecki but ORDERS that Drzewiecki (1) return information that she downloaded onto the UDisk Drive and SanDisk drive that falls within the ambit of her Agreement with TKE pursuant to Count I of the Complaint; (2) return that information by 5:00 PM on Monday, March 17, 2025; and (3) to the extent that she is presently unaware of the location of that information, make every good faith and reasonable effort to locate and return the information. This order does not extend to copies that Drzewiecki may have made of the information;

3. Defendants Nouveau and Drzewiecki shall file responsive pleadings to the Complaint within 21 days of the date of this Memorandum Order (that is, by April 1, 2025);

4. The Clerk of this Court shall transmit copies of this Memorandum Order to counsel of record.

/s/
_____
Richard D. Bennett
United States Senior District Judge

Dated: March 11, 2025