### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TK ELEVATOR CORPORATION, *f/k/a* THYSSENKRUPP ELEVATOR CORPORATION | * | |
| | * | |
| *Plaintiff,* | * | Civil Action No. RDB-25-0744 |
| v. | * | |
| NICHOLE DRZEWIECKI, *et al.,* | * | |
| *Defendants.* | * | |

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*      \*

### <u>MEMORANDUM OPINION</u>

This matter arises from a dispute between Plaintiff TK Elevator Corporation, formerly known as Thyssenkrupp Elevator Corporation ("Plaintiff" or "TK Elevator"), its former employee Nichole Drzewiecki ("Individual Defendant" or "Ms. Drzewiecki"), and Ms. Drzewiecki's subsequent employer, Nouveau Elevator DC ("Entity Defendant" or "Nouveau") (collectively with Ms. Drzewiecki, "Defendants"). TK Elevator alleges that Ms. Drzewiecki impermissibly downloaded its confidential information and trade secrets and provided that information to Nouveau in violation of her employment agreement. (ECF No. 1 ¶¶ 26–36, 38–44.) It further alleges that Nouveau and Ms. Drzewiecki have used that information to improperly solicit its clients. (*Id.* ¶¶ 7, 42–43, 46, 48, 49, 60, 108.) On March 6, 2025, TK Elevator initiated this action against Ms. Drzewiecki and Nouveau by filing a seven-Count, partially verified Complaint (ECF No. 1) in this Court. TK Elevator alleges breach of contract against Ms. Drzewiecki (Count I); violation of the federal Defend Trade Secrets Act, 18 U.S.C. § 1831, *et seq.*, against both Defendants (Count II); violation of the

Maryland Uniform Trade Secrets Act, MD. CODE ANN. COM. LAW § 11-1201, *et seq.*, against both Defendants (Count III); temporary, preliminary, and permanent injunction against both Defendants (Count IV); tortious interference with contractual relations against Nouveau (Count V); tortious interference with prospective business against both Defendants (Count VI); and unfair competition against both Defendants (Count VII). *See* (ECF No. 1).[1] Also on March 6, 2025, TK Elevator filed a Motion for Temporary Restraining Order. (ECF No. 2.) Following a hearing, this Court denied the Motion for Temporary Restraining Order in full as to Nouveau and in part as to Ms. Drzewiecki.[2] *See* (ECF Nos. 25, 26). Ms. Drzewiecki then filed a Partial Answer (ECF No. 33) as to the claims against her in Counts I, VI, and VII.

Presently pending before this Court are five motions: (1) Nouveau's Motion to Dismiss Plaintiff's Complaint for Failure to State a Claim (ECF No. 37) ("Nouveau's Motion to Dismiss"); (2) Ms. Drzewiecki's Motion to Dismiss Plaintiff's Complaint as to Counts II, III, and IV (ECF No. 38) ("Ms. Drzewiecki's Motion to Dismiss") (collectively with ECF No. 37, "Defendants' Motions to Dismiss"); (3) Nouveau's Motion to Stay Discovery Pending Resolution of its Motion to Dismiss (ECF No. 55) ("Nouveau's Motion to Stay Discovery"); (4) Ms. Drzewiecki's Motion to Join in Part Defendant Nouveau's Motion to Stay Discovery

---

[1] This Court has diversity jurisdiction of this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, and TK Elevator is citizen of Delaware and Georgia, (ECF No. 1 ¶ 8), while Defendants are citizens of Maryland, (*id.* ¶¶ 9–11). Additionally, this Court has federal question jurisdiction under 28 U.S.C. § 1331 because TK Elevator alleges a violation of federal statute, the Defendant Trade Secrets Act, 18 U.S.C. §§ 1831, *et seq.* in Count II. Finally, this Court has supplemental jurisdiction of the remaining claims in Counts I, III, IV, V, VI, and VII under 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Count II.

[2] Specifically, this Court ordered Ms. Drzewiecki to "(1) return information that she downloaded onto the UDisk Drive and SanDisk drive that falls within the ambit of her Agreement with TK[ Elevator] pursuant to Count I of the Complaint; (2) return that information by 5:00 PM on Monday, March 17, 2025; and (3) to the extend that she is presently unaware of the location of that information, make every good faith and reasonable effort to locate and return the information." (ECF No. 26 at 13 ¶ 2.) The Court specified that its order did "not extent to copies that [Ms.] Drzewiecki may have made of the information[.]" (*Id.*)

(ECF No. 56); and (5) TK Elevator's Motion for Leave to File Surreply to Motion to Stay Discovery (ECF No. 61).  The parties' submissions have been reviewed, and no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2025).  For the reasons set forth below, the Court rules as follows:

1. Ms. Drzewiecki's Motion to Dismiss (ECF No. 38) is GRANTED IN PART and DENIED IN PART.  Specifically, her Motion is GRANTED to the extent she seeks to join Nouveau's Motion to Dismiss, and it is GRANTED as to Count IV, which is DISMISSED WITH PREJUDICE as to all Defendants.  Her Motion is DENIED as Counts II and III.

2. Nouveau's Motion to Dismiss (ECF No. 37) is GRANTED IN PART and DENIED IN PART.  Specifically, Nouveau's Motion is GRANTED as to Count IV, which is DISMISSED WITH PREJUDICE as to all Defendants.  Nouveau's Motion is DENIED as to Counts II, III, V, VI, and VII.

3. Nouveau's Motion to Stay Discovery (ECF No. 55) is DENIED AS MOOT.

4. Ms. Drzewiecki's Motion to Join in Part Nouveau's Motion to Stay Discovery (ECF No. 56) is DENIED AS MOOT.

5. TK Elevator's Motion for Leave to File Surreply (ECF No. 61) is DENIED AS MOOT.

Ms. Drzewiecki shall file a Partial Answer to Counts II and III, and Nouveau shall file an Answer as to the remaining claims against it in Counts II, III, V, VI, and VII within fourteen (14) days of the date of this Memorandum Opinion and accompanying Order.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Except where otherwise indicated, the following facts are derived from Plaintiff's Complaint (ECF No. 1) and accepted as true for the purpose of Defendants' Motions to Dismiss (ECF Nos. 37, 38).

TK Elevator, which is headquartered in Atlanta, Georgia, installs, modernizes, repairs, and maintains escalators and moving walks, urban mobility solutions, and elevators for residential and commercial buildings throughout the United States. (ECF No. 1 ¶¶ 17–18.) It alleges that it has developed Trade Secrets and Confidential Information[3] not readily

---

[3] TK Elevator defines Trade Secrets and Confidential Information in the employment contracts it provides to employees. *See* (ECF No. 1 ¶ 30 (quoting ECF No. 1 Ex. A § 2(a)–(b))). It defines Trade Secrets as follows:

"Trade Secrets" mean information, including a formula, pattern, compilation, program, device, method, technique or process, that: (1) derives independent economic value, actual or potential, from not being generally known to the public or to other persons or entities who can obtain economic value from its disclosure or use and (2) is the subject of efforts that are reasonable under the circumstances to maintain it secrecy. [TK Elevator's] Trade Secrets include, but are not limited to, the following: [TK Elevator] bidding information, cost information, cost and bid estimating processes information, profit margins, profit and revenue targets and results, prices, pricing methodologies, personnel cost information, customer and prospective customer information (including, but not limited to, customer lists, prospective customer lists, product and service pricing information, revenues from customer accounts, purchasing habits and patterns of [TK Elevator] customers, contract terms, contact information, contract expiration dates, customer proposals), marketing plans and strategies, marketing program methods and techniques information, service and repair processes, service contract information, technical manuals, technical data design and/or architectural drawings, processes, formulae, discoveries, developments, designs, improvements, inventions, experimental and research work, methods, machines, tools, manufacturing techniques, proprietary computer software developed by or for [TK Elevator's] internal use, and supplier lists. Employee acknowledges and agrees that [TK Elevator's] Trade Secrets are not generally known to the public or to [TK Elevator's] competitors, were developed or compiled at significant expense by [TK Elevator] over an extended period of time, are the subject of [TK Elevator's] reasonable efforts to maintain their secrecy, and that [TK Elevator] derives significant independent economic value by keeping its Trade Secrets a secret.

ascertainable in the industry or by the public. (*Id.* ¶¶ 21–23.) TK Elevator protects that information by using password-protected, secure, cloud-based systems, networks and computers; limiting access to only employees or other authorized individuals; sharing trade secrets with only those employees who need to know them; and maintaining lawful confidentiality agreements to keep sensitive information secure. (*Id.* ¶¶ 24–25.)

Ms. Drzewiecki began working for TK Elevator in 2021 as a Service/Repair Sales Representative in College Park, Maryland. (*Id.* ¶ 27.) In that role, she solicited equipment service and repair contract bids from TK Elevator's customers and prospects in Southern Maryland, Northern Virginia, and Washington, D.C. (*Id.*) Due to the nature of her sales position, Ms. Drzewiecki received access to TK Elevator's Trade Secrets and Confidential Information, including confidential proprietary customer lists, customer service histories and contract terms, sales techniques, pricing of parts and labor, strategic planning information, and information regarding key personnel and prospects. (*Id.* ¶¶ 26, 27.) To protect such information, TK Elevator required Ms. Drzewiecki to sign an employment agreement ("Agreement") containing several restrictive covenants. (*Id.* ¶¶ 1, 28–29.) On August 19,

---

(ECF No. 1 Ex. A § 2(a).) Similarly, in relevant part, it defines "Confidential Information" to include:

> . . . all information belonging to [TK Elevator], whether reduced to writing or in a form from which such information can be obtained, translated or derived into reasonably usable form, that has been provided to Employee during his/her employment with [TK Elevator] and/or Employee has gained access to while employed by [TK Elevator] and/or was developed by Employee in the course of Employee's employment with [TK Elevator], that is proprietary and confidential in nature. [TK Elevator's] Confidential Information includes, but is not limited to, information listed in Subparagraph 2.a above and also listed herein below believed by [TK Elevator] to be a Trade Secret that ultimately does not qualify as such under applicable state law but nonetheless was maintained by [TK Elevator] as confidential . . .

(*Id.* § 2(b).)

2021, Ms. Drzewicki signed the Agreement, which included (1) a provision defining TK Elevator's property, (ECF No. 1 Ex. A § 3); (2) a "Covenant Not to Use, Publish, or Disclose [TK Elevator's] Trade Secrets and/or Confidential Information During and After Termination of Employment ("Confidentiality Provision"), (*id.* § 4); (3) provisions defining Trade Secrets, (*id.* § 2(a)), and Confidential Information, (*id.* § 2(b)); and (4) a Non-Solicitation Covenant ("Non-Solicitation Provision"), (*id.* § 5). *See also* (ECF No. 1 ¶¶ 28, 29–33 (quoting ECF No. 1 Ex. A)). On January 17, 2024, Ms. Drzewiecki resigned from her position at TK Elevator and, thereafter, accepted employment with its direct competitor, Nouveau. (ECF No. 1 ¶¶ 2, 45.) At Nouveau, Ms. Drzewiecki provides similar services to customers in the same mid-Atlantic area that she covered for TK Elevator. (*Id.* ¶ 45.)

TK Elevator alleges that in the period preceding her resignation, Ms. Drzewiecki violated her Agreement by impermissibly downloading Confidential Information and Trade Secrets from her TK Elevator-issued laptop. (*Id.* ¶ 38.) After Ms. Drzewiecki began to work for Nouveau, TK Elevator retained a professional forensic consultant who forensically examined her TK Elevator-issued laptop. (*Id.*) That examination revealed that, on several occasions prior to her resignation, Ms. Drzewiecki connected a SanDisk Drive and UDisk Drive to the laptop and transferred "a multitude of files containing TKE's Trade Secrets and Confidential Information off of TK Elevator's servers." (*Id.*) Specifically, on December 13, 2023, she copied onto the SanDisk Drive at least four files—(1) Service Contract Overview December 2023.xlsx; (2) Repair Product Standard Pricing Mid-Atlantic FY 21 – Copy1.xslx; (3) National Account List – 2.2023.xlsx; and (4) 901 15 – McPherson – BOOKING DOCS.rtf—that contained information such as customer lists, service contracts, and pricing

strategies and information.  (*Id.* ¶¶ 39–40.)  On January 10, 2024, Ms. Drzewiecki transferred to the UDisk Drive files (1) 901 15 Street NW – McPherson 2022.pdf; (2) McPherson – 901 15 – TKExtend 2023 CW.pdf; (3) McPherson – 901 15 – TKExtend 2024.pdf; and (4) McPherson – 901 15 – 11th Floor Reno.  (*Id.* ¶ 41.)  TK Elevator alleges that these files contain Trade Secrets and Confidential Information such as hourly rate information, estimate and survey templates, bidding and booking documents, capital planners, and service and repair proposals.  (*Id.* ¶ 42.)  TK Elevator alleges that Ms. Drzewiecki "took these steps in an effort to illegally compete with TK Elevator for the benefit and as an agent of Nouveau" in violation of her contractual and legal obligations.  (*Id.* ¶ 43.)

TK Elevator alleges that following Ms. Drzewiecki's resignation, its clients McPherson and Waterview[4] declined to continue their service contracts and instead retained Nouveau. (*Id.* ¶¶ 46–47.)  It alleges that Ms. Drzewiecki, acting on Nouveau's behalf, misappropriated the information that she downloaded from her TK Elevator laptop—including, for example, billing frequencies, scope of contract coverage, rates and billing amounts, route personnel, and Waterview's contract values—to solicit McPherson and Waterview on behalf of Nouveau. (*Id.*)  It further alleges that, during the relevant period, Ms. Drzewiecki was Nouveau's only Service/Sales Representative operating in the geographic area.  (*Id.* ¶ 48.)  Although TK Elevator's investigation into Ms. Drzewiecki's conduct remains ongoing, it alleges that she has solicited additional clients with whom she had contact in the two years preceding her resignation.  (*Id.* ¶ 49.)  It alleges that Nouveau was fully aware of Ms. Drzewiecki's Agreement

---

[4] McPherson refers to the McPherson Building located at 901 15th Street NW, Washington, D.C. 20005, while Waterview refers to the Waterview Building located at 1919 N. Lynn Street, Arlington, VA 22209.  (ECF No. 1 ¶¶ 46, 47.)

and its terms, including the Non-Solicitation and Confidentiality Provisions.  (*Id.* ¶ 52.)

TK Elevator did not learn of Ms. Drzewiecki's improper conduct until after she terminated her employment.  (*Id.* ¶ 44.)  On October 23, 2024, counsel for TK Elevator sent Ms. Drzewiecki a letter advising her that she had violated her Agreement and federal law, notifying her of the possibility of litigation against her, and demanding that she "purge herself of all TKE property in her possession and immediately comply with the Agreement."  (*Id.* ¶ 51; ECF No. 1 Ex. B.)  On December 18, 2024, TK Elevator provided Nouveau a copy of Ms. Drzewiecki's Agreement and demanded that Nouveau cease and desist employing her in a manner that would violate that Agreement.  (ECF No. 1 ¶ 53.)  It also demanded that Nouveau disgorge itself of profits obtained in violation of Ms. Drzewiecki's Agreement.  (*Id.*)  Defendants declined to confirm their compliance with these demands.  (*Id.* ¶ 54.)

Accordingly, on March 6, 2025, TK Elevator initiated this action by filing in this Court a seven-Count partially verified Complaint against Defendants.[5]  *See generally* (ECF No. 1). Specifically, TK Elevator alleges against Ms. Drzewiecki alone breach of contract (Count I) and against Nouveau alone tortious interference with contractual relations (Count V).  (ECF No. 1 ¶¶ 59–66, 104–112.)  Against both Defendants, it alleges violation of the federal Defend Trade Secrets Act, 18 U.S.C. §§ 1831 *et seq.* ("DTSA") (Count II); violation of the Maryland Uniform Trade Secrets Act, MD. CODE ANN., COM. LAW §§ 11-1201 *et seq.* ("MUTSA") (Count III); temporary, preliminary and permanent injunction (Count IV); tortious

---

[5]  Plaintiff's Complaint is partially verified because its statement of verification applies only to "the facts contained in Paragraphs 8–37 and 42–58 of the foregoing Verified Complaint . . . ."  (ECF No. 1 at 32.)  That is, the allegations in Paragraphs 38–41 of the Complaint are not verified.

interference with prospective business (Count VI); and unfair competition (Count VII).[6] (ECF No. 1 ¶¶ 67–103, 113–126.)  Also on March 6, 2025, TK Elevator filed a Motion for Temporary Restraining Order (ECF No. 2).  On March 10, 2025, this Court heard oral argument regarding TK Elevator's Motion for Temporary Restraining Order, *see* (ECF No. 25), and, via Memorandum Order dated March 11, 2025, denied that Motion in full as to Nouveau and in part as to Ms. Drzewiecki, (ECF No. 26).  On April 1, 2025, Ms. Drzewiecki filed a Partial Answer (ECF No. 33) as to Counts I, VI, and VII.

Presently pending before this Court are five motions: (1) Nouveau's Motion to Dismiss (ECF No. 37); (2) Ms. Drzewiecki's Motion to Dismiss as to Counts II, III, and IV (ECF No. 38); (3) Nouveau's Motion to Stay Discovery (ECF No. 55); (4) Ms. Drzewiecki's Motion to Join in Part Nouveau's Motion to Stay Discovery (ECF No. 56); and (5) Plaintiff's Motion for Leave to File Surreply as to Defendant's Motion to Stay Discovery (ECF No. 61).  This matter is now ripe for review.

## STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  FED. R. CIV. P. 8(a)(2).  Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted.  "'[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint' and not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of

---

[6] As discussed further below, TK Elevator expressly alleges theories of *respondeat superior* liability against Nouveau as to Counts II and III.  (ECF No. 1 ¶¶ 76, 87.)  Nevertheless, its allegations as to Count VI includes statements that Ms. Drzewiecki acted within the scope of her employment and as agent of Nouveau, (*id.* ¶¶ 115, 48, 122), and it addresses Count VI under theories of vicarious liability in its briefing.  Accordingly, the Court addresses Count VI against Nouveau under a theory of vicarious liability.

defenses.'" *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action . . . ." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

## ANALYSIS

### I.    Defendants' Motions to Dismiss (ECF Nos. 37, 38)

In its Motion to Dismiss (ECF No. 37), Nouveau argues that TK Elevator has not sufficiently alleged in Counts II and III that trade secrets exist or, alternatively, that Nouveau is directly or vicariously liable for any misappropriation of trade secrets. (ECF No. 37-1 at 11–21.) Next, it contends that there is no cause of action for injunctive relief such that Count IV must be dismissed. (*Id.* at 21.) Finally, it argues that TK Elevator has not alleged any facts

as to Nouveau's knowledge or direct involvement in Ms. Drzewiecki's alleged tortious conduct such that the common law tort claims against it in Counts V, VI, and VII must be dismissed. (*Id.* at 21-27.)  In her Motion to Dismiss (ECF No. 38), Ms. Drzewicki seeks to join Nouveau's arguments as to Counts II, III, and IV.  *See* (ECF No. 38-1 ¶¶ 1–2).  The Court addresses each claim in turn, and any relief ordered with respect to Nouveau's Motion (ECF No. 37) as to Counts II, III, and IV shall apply equally to Ms. Drzewiecki.  As explained further below, Nouveau's Motion—and, therefore, Ms. Drzewiecki's Motion—is GRANTED as to Count IV and DENIED as to all other claims.

### a. Counts II and III: Misappropriation of Trade Secrets as to both Defendants

In Counts II and III, TK Elevator alleges that Defendants misappropriated its trade secrets in violation of the federal Defend Trade Secrets Act, 18 U.S.C. §§ 1831 *et seq.* ("DTSA"), and Maryland's Uniform Trade Secrets Act, MD. CODE ANN., COM. LAW §§ 11-1201 *et seq.* ("MUTSA"), respectively.  It is well recognized that "[t]o establish misappropriation of a trade secret under federal law and Maryland state law, [the plaintiff] must demonstrate that the documents at issue are trade secrets, and that that Defendants misappropriated those trade secrets." *ClearOne Advantage, LLC v. Kersen*, 710 F. Supp. 3d 425, 435 (D. Md. 2024) [hereinafter *ClearOne I*] (quoting *Brightview Grp. LP v. Teeter*, 441 F. Supp. 3d 115, 129 (D. Md. 2020)); *see also* 18 U.S.C. §§ 1836(b)(1), 1839(3), (5); MD. CODE ANN., COM. LAW § 11-1202.  In its Motion to Dismiss, Nouveau argues that Plaintiff has not sufficiently alleged that any of the documents allegedly downloaded constitute a trade secret or that Defendants misappropriated any information within those documents.  *See generally* (ECF No. 37-1 at 12–21).  Nouveau emphasizes that TK Elevator has not provided or described in detail

the documents at issue. *See* (ECF No. 37-1 at 13; ECF No. 44 at 4–5.)  In Opposition, Plaintiff contends that it has sufficiently alleged its misappropriation claims because it describes the alleged trade secrets in its Complaint and, at the pleading stage, courts may properly infer misuse. *See* (ECF No. 41 at 4–12).  The Court addresses each argument in turn, beginning with whether Plaintiff has sufficiently alleged trade secrets.

### i.   Trade Secrets

As this Court has previously recognized, "[t]he DTSA and MUTSA define a trade secret in 'substantially the same manner.'"  *Savaria USA, Inc. v. Elevator Works, LLC*, Civ. No. RDB-24-1311, 2024 WL 2212914, at *8 (D. Md. May 16, 2024) (quoting *Md. Physician's Edge LLC v. Behram*, Civ. No. DKC-17-2756, 2019 WL 4573417, at *5 (D. Md. Sept. 20, 2019)); *accord Philips N. Am. LLC v. Hayes*, Civ. No. ELH-20-1409, 2020 WL 5407796, at *8 (D. Md. Sep. 9, 2020).  As Judge Bredar of this Court has noted, under both acts, "a trade secret includes 'all forms and types of financial, business, scientific, technical, economic, or engineering information' if (1) the owner took reasonable steps to keep the information secret, and (2) the information derives independent economic value from not being generally known or readily ascertainable by potential competitors."  *ClearOne I*, 710 F. Supp. 3d at 435 (quoting 18 U.S.C. § 1839(3)); *see also* MD. CODE ANN., COM. LAW § 11-1201(e).  Under the DTSA, however, a plaintiff must allege its trade secrets "with sufficient particularity."  *Sysco Mach. Corp. v. DCS USA Corp.*, 143 F.4th 222, 228 (4th Cir. 2025).  In this case, TK Elevator has sufficiently alleged both elements of a trade secret with the required particularity.

As the pleading stage, a plaintiff satisfies the first element of a trade secret by alleging that employees were required to sign confidentiality agreements applicable to the alleged trade

secret. *See Samuel Sherbrooke Corp., Ltd. v. Mayer*, 159 F.4th 252, 257 (4th Cir. 2025) ("At the pleading stage, then, it is sufficient that Appellants allege they protected the Proprietary Software by requiring employees to sign the confidentiality agreement and Invention Provision contained in the employment contract." (footnote omitted)); *see also dmarcian, Inc. v. dmarcian Eur. BV*, 60 F.4th 119, 141 (4th Cir. 2023) (listing confidentiality agreement and restricted access as reasonable steps to keep information secret). In this case, TK Elevator has alleged that it (1) housed the documents at issue in cloud-based systems that were password protected; (2) limited access to such systems to authorized individuals and employees; (3) limited access to trade secrets to "employees on a need-to-know basis;" and (4) required employees accessing the documents to sign confidentiality agreements that prohibited disclosure of the information or documents, *see* (ECF No. 1 ¶¶ 25–32, 36).

As to the second element, TK Elevator has sufficiently alleged that the documents at issue derive independent economic value from their secrecy or confidentiality. As Judge Hollander of this Court has explained, "business plans, pricing and cost information, and customers lists for companies operating in competitive sales industries derive independent economic value from their confidentiality." *Philips N. Am.*, 2020 WL 5407796, at *8 (collecting cases); *see also Albert S. Smyth Co., Inc. v. Motes*, Civ. No. CCB-17-677, 2018 WL 3635024, at *3–4 (D. Md. July 31, 2018) (holding plaintiff sufficiently alleged trade secrets including "customer records, employment records, business plans, pricing information, vendor lists, and other confidential information"). Indeed, this Court has repeatedly recognized that "[i]n a competition for sales, information about potential customers and their buying habits, a competitor's pricing, business strategies, and vendors is a windfall, granting the recipient a key

to undercut the competition's pricing, outbid their vendor contracts, and attract their customers." *Aarow Elec. Sols. v. Tricore Sys., LLC*, 693 F. Supp. 3d 525, 539 (D. Md. 2023) (collecting cases) (quoting *Albert S. Smyth Co.*, 2018 WL 3635024, at *4). Similarly, information regarding potential customers "who have already expressed interest in [plaintiff's] services and provided certain confidential information to the company" may constitute a trade secret. *ClearOne Adv., LLC v. Kersen*, 756 F. Supp. 3d 30, 42 (D. Md. 2024) [hereinafter *ClearOne II*] (quoting *ClearOne I*, 710 F. Supp. 3d at 435–36).

In this case, TK Elevator has alleged that Defendants misappropriated hourly rate information; estimate and survey templates; bidding documents; capital planners; service and repair proposals; and booking documents. (*Id.* ¶ 42.) At minimum, the booking documents, and specific information related to TK Elevator's business with McPherson—which TK Elevator alleges were protected from public disclosure via confidentiality agreements and authorized user limitations—derive independent economic value from their confidentiality. Moreover, TK Elevator has alleged that these documents encompass specific contracts, including "contract values, billing frequencies, scope of contract coverage, rates and billing amounts, and route personnel" for a particular customer; national account lists; and pricing information such as hourly rate information and bidding documents. *See* (ECF No. 1 ¶¶ 47, 37, 41–42.) Such information derives value from its confidentiality, *see, e.g.*, *ClearOne II*, 756 F. Supp. 3d at 42, such that TK Elevator has sufficiently alleged trade secrets.

Finally, TK Elevator has alleged trade secrets "with sufficiently particularity" as required to state a claim under DTSA. *Sysco Machinery Corp.*, 143 F.4th at 228. "At the pleading stage, identifying [a] trade secret with sufficient particularity means describing the trade secret

14

at a level of detail that enables 'a defendant to delineate that which he is accused of misappropriating' and that enables a court to determine whether the plaintiff has plausibly satisfied the reasonable secrecy and independent economic value requirements." *Id.* (internal citations omitted) (citing *Synopsis, Inc. v. Risk Based Security, Inc.*, 70 F.4th 759, 769 (4th Cir. 2023)). Generally, this requires a plaintiff to allege more than a "list [of] categories of alleged trade secrets in broad terms . . . ." *Design Gaps, Inc. v. Hall*, 2023 WL 8103156, at *8 (W.D.N.C. Nov. 21, 2023) (quoting *Calendar Rsch. LLC v. StubHub, Inc.*, 2020 WL 4390391, at *6 (C.D. Cal. May 13, 2020)); *see Recon Grp. LLP v. Lowe's Home Centers, LLC*, 743 F. Supp. 3d 737, 750 (W.D.N.C. 2024); *Safe Haven Wildlife Removal & Prop. Mgmt. Experts, LLC v. Meridian Wildlife Servs.*, 716 F. Supp. 3d 432, 447, 448 (W.D. Va. 2024).

In this case, TK Elevator specifically alleges that Defendants misappropriated nine documents: (1) Service Contract Overview December 2023; (2) Repair Product Standard Pricing Mid-Atlantic FY21 – Copy1; (3) National Account List – 2.2023; (4) 901 15 – McPherson – BOOKING DOCS; (5) Service Proposals; (6) 901 15 Street NW – McPherson 2022; (7) McPherson – 901 15 – TKExtend 2023 CW; (8) McPherson – 901 15 – TKExtend 2024; (9) McPherson – 901 15 – 11th Floor Reno. (ECF No. 1 ¶¶ 39, 41.) Nouveau contends that the "Repair Product Standard Pricing Mid-Atlantic FY 21 – Copy1.xlsx" and "National Account List – 2.2023.xlsx" contain stale or "obsolete" information such that they cannot constitute trade secrets. (ECF No. 37-1 at 15 (quoting *Fox Sports Net N., LLC v. Minnesota Twins P'ship*, 319 F.3d 329, 336 (8th Cir. 2003)).) Although some courts have recognized such a limitation at the summary judgment stage, *see, e.g.*, *Fox Sports Net N.*, 319 F.3d at 336, courts within the Fourth Circuit have recognized that, at the pleading stage, allegations of

confidential, valuable information are sufficient to allege a trade secret notwithstanding the information's purported staleness, *Safe Haven Wildlife Removal & Prop. Mgmt. Experts, LLC*, 716 F. Supp. 3d at 447 n.5. At this pleading stage, therefore, Plaintiff has met its burden by alleging the elements of a trade secret as explained above. By identifying the information both by document title and by a description of its content, including the names of specific contracts and clients involved, TK Elevator has alleged the trade secrets with sufficient particularity to allow Defendants to delineate the information at issue.[7] *See Sysco Machinery*, 143 F.4th at 228.

To the extent that Defendants argue that the information at issue is publicly available such that it cannot constitute a trade secret, public availability does not automatically strip information of status as a trade secret. *See, e.g.*, *Brightview Grp.*, 441 F. Supp. 3d at 130 (recognizing underwriting templates containing plaintiff's "nuanced, data-specific formulas and data amassed over twenty-five years in business" still hold independent value from confidentiality despite being publicly available). Rather, "a trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret." *AirFacts, Inc. v. de Amezaga*, 909

---

[7] To the extent that Defendants argue that Plaintiff has not alleged trade secrets with particularity, they overstate Plaintiff's burden at the pleading stage. Indeed, nearly all the cases to which Defendants cite evaluated particularity at the preliminary injunction, summary judgment, or trial stages. *See, e.g.*, (ECF No. 37-1 at 13 (first citing *Kancor Ams., Inc. v. ATC Ingredients, Inc.*, 2016 WL 740061 (E.D. Va. Feb. 25, 2016) (addressing cross-motions for summary judgment), and then citing *Brightview Grp.*, 441 F. Supp. 3d at 136 (evaluating motion for preliminary injunction)). Defendants also cite this Court's conclusion during the preliminary injunction hearing that it could not "make a finding that [the information at issue] was necessarily a trade secret." (ECF No. 44 at 2; ECF No. 44 Ex. A.) As explained above, at the pleading stage, the inquiry is not whether a plaintiff can definitively establish a trade secret. Rather, the inquiry before this Court is whether, accepting as true all facts in the complaint and drawing all reasonable inferences to favor the plaintiff, TK Elevator has *alleged* trade secrets with facts sufficient to allow Defendants to identify the information at issue. *Sysco Machinery Corp.*, 143 F.4th at 228. At this pleading stage, TK Elevator has met its burden.

F.3d 84, 96 (4th Cir. 2018) (quoting *Imperial Chem. Indus. v. Nat'l Distillers & Chem. Corp.*, 342 F.2d 737, 742 (2d Cir. 1965)).   In this case, Defendants argue that some of TK Elevator's projects and accounts have been published on its website.[8]  (ECF No. 37-1 at 15.)  Defendants do not argue, however, that *all* of Plaintiff's account lists are publicly available, or that the accounts specifically identified in the Complaint are publicly available.  At this pleading stage, therefore, Plaintiff has sufficiently alleged that at least some of the information at issue derives economic value from its confidentiality.  *See AirFacts*, 909 F.3d at 96; *NaturaLawn of Am., Inc. v. West Grp., LLC*, 484 F. Supp. 2d 392, 399 (D. Md. 2007) (concluding customer lists were trade secret even though employees and franchisees knew of them because plaintiff took reasonable steps to maintain lists' confidentiality).

### ii.    Misappropriation

Under both the Maryland and federal trade secrets statutes, misappropriation occurs "when a person either (1) acquires a trade secret while knowing, or having reason to know, that the trade secret was acquired by improper means, 18 U.S.C. § 1839(5)(A), or (2) uses or discloses the trade secret after acquiring it through improper means, *id.* § 1839(5)(B)(i)." *Brightview Grp.*, 441 F. Supp. 3d at 132; *see also* MD. CODE ANN., COM. LAW. § 11-1201(c).  As explained further below, TK Elevator alleges that Ms. Drzewiecki directly misappropriated the trade secrets at issue and Nouveau is vicariously liable for her misappropriation.  Thus, the Court addresses each Defendant's alleged misappropriation separately.

---

[8]  Nouveau also argues that some account list information is easily discernable because Plaintiff's clients are buildings with elevators.  (ECF No. 37-1 at 15.)  Such an expansive reading of "readily ascertainable" would preclude any specialized business from asserting that its account lists receive DTSA and MUTSA protection.

### 1. Ms. Drzewiecki

As to Ms. Drzewiecki, Plaintiff has sufficiently alleged that she "acquire[d an alleged] trade secret while knowing, or having reason to know, that [it] was acquired by improper means . . . ." *Brightview Grp.*, 441 F. Supp. 3d at 132 (citing 18 U.S.C. § 1839(5)(A)). "Even if an employee does not disclose trade secrets to a third party, he can misappropriate those trade secrets if he knows or has reason to know he acquired them 'by improper means.'" *AirFacts*, 909 F.3d at 98 (quoting MD. CODE ANN., COM. LAW § 11-1201(c)(1)); *accord Brightview Grp.*, 441 F. Supp. 3d at 132 (citing 18 U.S.C. § 1839(5)). In this case, Plaintiff has alleged that Ms. Drzewiecki downloaded the information shortly before the conclusion of her employment and then failed to return that information despite her contractual obligation to do so. *See, e.g.*, (ECF No. 1 ¶¶ 5, 32, 38–42, 47). Moreover, it has alleged that the information downloaded was accessible only to authorized individuals via a secure, password-protected cloud service. (*Id.* ¶¶ 5, 25, 38.) TK Elevator has alleged, therefore, that Ms. Drzewiecki knowingly downloaded and refused to return trade secrets in violation of her confidentiality agreement. This is sufficient to allege misappropriation, and Ms. Drzewiecki's Motion to Dismiss (ECF No. 38) is DENIED as to Counts II and III.

### 2. Nouveau

Distinct from the allegations of direct misappropriation as to Ms. Drzewiecki, TK Elevator's claims of misappropriation as to Nouveau allege only vicarious or *respondeat superior* liability.[9]  *See* (ECF No. 1 ¶ 5, 76, 87 (alleging Nouveau is vicariously liable for

---

[9] Both parties apply theories of vicarious liability under DTSA and MUTSA. *See, e.g.*, (ECF No. 41 at 10; ECF No. 37-1 at 16). It does not appear that the U.S. Court of Appeals for the Fourth Circuit has directly addressed vicarious liability under DTSA, but "many federal district courts have held that the DTSA allows for *respondeat*

misappropriation of trade secrets); (ECF No. 41 at 10 ("In its Verified Complaint, TKE clearly alleges that Nouveau is vicariously liable for Drzewiecki's use of its trade secrets as an employee and agent of Nouveau . . . .")).  "Under Maryland law, the doctrine of *respondeat superior* permits 'an employer to be held vicariously liable for the tortious conduct of its employee when that employee was acting within the scope of the employment relationship.'" *Forkwar v. Empire Fire & Marine Ins. Co.*, 487 F. App'x 775, 778 (4th Cir. 2012) (quoting *Oaks v. Connors*, 660 A.2d 423, 426 (Md. 1995)).  "Although 'there are few, if any, absolutes' involved in determining whether an employee's acts occurred within the 'scope of employment,' the general test in Maryland is that the acts must have been authorized and in furtherance of the employer's business." *Williams v. Cloverfield Farms Dairy, Inc.*, 78 F. Supp. 2d 479, 483 (D. Md. 1999) (quoting *Sawyer v. Humphries*, 587 A.2d 467, 470–71 (Md. 1991)).  "Under Maryland law, scope of employment is generally a question for the jury" that is appropriate for determination as a matter of law only "when an employee's conduct is 'very marked and unusual' . . . ." *Wiley v. Cadiz,* Civ. No. WDQ-05-1783, 2005 WL 8174314, at *2 (D. Md. Dec. 14, 2005) (quoting *Jordan v. W. Distrib. Co.*, 135 F. App'x 582, 585 (4th Cir. 2005) (unpublished)).

In this case, the parties dispute whether Ms. Drzewiecki's alleged misappropriation occurred within the scope of her employment with Nouveau such that Nouveau may be

---

*superior* liability." *Peloton Interactive, Inc. v. iFIT, Inc.*, 2022 WL 1523112, at *2 n.1 (D. Del. May 13, 2022) (collecting cases); *see also S. Tr. Mortg., LLC v. Movement Mortg., LLC*, 2025 WL 1447379, at *6 (E.D. Va. May 20, 2025) (recognizing defendant may be vicariously liable under DTSA).  Although this Court has not located any cases explicitly addressing the application of vicarious liability to claims under the MUTSA, this Court has repeatedly recognized that the MUTSA is largely consistent with the DTSA.  *See, e.g., Philips N. Am.*, 2020 WL 5407796, at *7–8 (analyzing MUTSA and DTSA claims together after concluding that "the majority of the elements of a misappropriation claim [under both statutes] are the same.")  Thus, notwithstanding the dearth of caselaw directly on point, application of *respondeat superior* liability to MUTSA claims is consistent with its application to claims under the DTSA.  Like the parties, therefore, this Court applies a theory of vicarious liability to Plaintiff's claims under DTSA and MUTSA in Counts II and III.

vicariously liable for her conduct.  As an initial matter, TK Elevator has sufficiently alleged that Ms. Drzewiecki's use of the trade secrets was in furtherance of Nouveau's business.  It alleges that, once employed at Nouveau, Ms. Drzewiecki successfully solicited the business of two of its former clients, and at least one of those clients is the subject of the documents that Ms. Drzewiecki allegedly downloaded.  *See* (ECF No. 1 ¶¶ 40–41, 46, 47).  Thus, the only remaining inquiry is whether Plaintiff has sufficiently alleged that she acted with Nouveau's authorization such that her conduct fell within the scope of her employment and Nouveau may be subject to vicarious liability.

An act is considered "authorized" by the employer when it is "incident to the performance of the duties entrusted to [the employee] by the [employer], even though in opposition to his express and positive orders." *Sawyer*, 587 A.3d at 470 (quoting *Hopkins C. Co. v. Read Drug & C. Co.*, 92 A. 478, 479–80 (Md. 1914)); *accord Khatami v. Compton*, 844 F. Supp. 2d 654, 659 (D. Md. 2012).  To determine whether an act is so "authorized," courts consider factors such as: "(1) whether the conduct is the kind the servant is employed to perform; (2) whether it occurred during a period not unreasonably disconnected from the authorized period of employment; (3) whether it occurred in the vicinity of the authorized area of employment; and (4) whether it was actuated, at least in part, by a purpose to serve the employer." *Williams*, 78 F. Supp. 2d at 483 (citing *Sawyer*, 587 A.2d at 471).  Notably, an employer may not be vicariously liable for its employees' intentional torts that "were personal and departed from the purpose of promoting the employer's interests." *Id.* (citing *Sawyer*, 587 A.2d at 471).  Conduct that was "unprovoked, highly unusual, and quite outrageous" suggests a personal motive likely outside the scope of employment.  *Sawyer*, 587 A.2d at 471 (citation

omitted). Nevertheless, as this Court and Maryland courts have explained, an employee's conduct may be "authorized" for the purposes of vicarious liability even where it is "in opposition to [the employer's] express and positive orders." *Williams*, 78 F. Supp. 2d at 483 (quoting *Sawyer*, 587 A.2d at 470–71).

Under the relevant factors, TK Elevator has sufficiently alleged that Ms. Drzewiecki's conduct was "authorized" such that Nouveau may be subject to vicarious liability. First, Plaintiff alleges that Ms. Drzewiecki improperly used its trade secrets to recruit its clients. *See, e.g.*, (ECF No. 1 ¶¶ 46, 47). Undoubtedly, Nouveau employed Ms. Drzewiecki to recruit clients in the same geographic area as the clients she previously served on behalf of TK Elevator such that her recruitment of such clients was conduct of "the kind [she was] employed to perform." *Williams*, 78 F. Supp. 2d at 483. Second, although Ms. Drzewiecki allegedly took the trade secrets before her employment with Nouveau, she allegedly *used* them during her employment with Nouveau to recruit TK Elevator's clients. (ECF No. 1 ¶¶ 40–41, 46–47.) Thus, the alleged misappropriation occurred "during a period not unreasonably disconnected from the authorized period of employment." *Williams*, 78 F. Supp. 2d at 483. Third, TK Elevator has sufficiently alleged that the misappropriation occurred in the vicinity of the authorized area of employment because it alleges that Ms. Drzewiecki misappropriated the trade secrets while serving the same geographic area she previously served at TK Elevator. (ECF No. 1 ¶ 45.) Finally, Ms. Drzewiecki's misappropriation was actuated at least in part to serve Nouveau because Nouveau benefitted to the extent that she used the trade secrets to recruit clients to Nouveau. Even assuming Ms. Drzewiecki intended to further her own interests by boosting her success as a salesperson, the effect of her conduct was to the direct benefit of Nouveau.

*See Maron v. United States*, 126 F.3d 317, 324 (4th Cir. 1997) (explaining test for authorization under Maryland law considers whether employee intended "at least in part" to serve employer).

As Nouveau emphasizes, "an important factor is whether the employee's conduct was 'expectable' or 'foreseeable,'" *Sawyer*, 587 A.2d at 471, but "[f]or the purposes of a motion under Rule 12(b)(6), it is reasonable to infer that, at the time of use, [defendant-employer] . . . either knew or had reason to know that [employee] owed a duty to [plaintiff] to maintain the secrecy of the [trade secret] materials," *Tao of Sys. Integration, Inc. v. Analytical Servs. & Materials, Inc.*, 299 F. Supp. 2d 565, 575 (E.D. Va. 2004).[10] Put differently, at the pleading stage, it is reasonable to infer that it was foreseeable to Nouveau—an employer in the same highly competitive industry as Plaintiff—that Ms. Drzewiecki owed a duty of secrecy to TK Elevator regarding the alleged trade secrets at issue and that she may use such trade secrets to Nouveau's benefit while serving clients in the same geographic area that she served at TK Elevator. *See, e.g.*, *Phreesia, Inc. v. Certify Glob., Inc.*, Civ. No. DLB-21-678, 2022 WL 911207, at *14 (D. Md. Mar. 29, 2022) ("[T]he Court can infer defendants' knowledge that the industry client was bound by customary confidentiality provisions."). TK Elevator has sufficiently alleged its misappropriation claims against Nouveau on a theory of vicarious liability, and Nouveau's Motion (ECF No. 37) is DENIED as to Counts II and III.

---

[10] Although this case considers vicarious liability under Virginia's Uniform Trade Secrets Act rather than Maryland's, this Court has previously observed that the MUTSA and Virginia Uniform Trade Secrets Act are so similar that "the same analysis would apply under either Virginia or Maryland law as both states have adopted trade secret statutes which closely track the Uniform Trade Secrets Act." *Motor City Bagels, LLC v. Am. Bagel Co.*, 50 F. Supp. 2d 460, 478 (D. Md. 1999) (citing *Avtec Sys., Inc. v. Peiffer*, 21 F.3f 568, 574 (4th Cir. 1994)).

### b. Count IV: Temporary, Preliminary, and Permanent Injunction as to both Defendants

As this Court has repeatedly recognized, "a request for injunctive relief does not constitute an independent cause of action; rather, the injunction is merely the remedy sought for the legal wrongs alleged . . . ." *Fare Deals Ltd. v. World Choice Travel.com, Inc.*, 180 F. Supp. 2d 678, 682 n.1 (D. Md. 2001). Defendants contend that Count IV improperly alleges injunction as a cause of action rather than a remedy. (ECF No. 37-1 at 21.) Plaintiff does not respond to this argument, *see generally* (ECF No. 41),[11] but this Court has repeatedly held that an injunction is not a cause of action. *See, e.g.*, *Sol v. M&T Bank*, 713 F. Supp. 3d 89, 112 (D. Md. 2024) (collecting cases). Defendants' Motions to Dismiss (ECF Nos. 37, 38) are GRANTED as to Count IV, which is DISMISSED WITH PREJUDICE as to both Defendants.[12]

### c. Count V: Tortious Interference with Contractual Relations as to Nouveau

As this Court has previously observed, "[t]o establish a claim for tortious interference with contract under Maryland law, a plaintiff must allege the following five elements: (1) a contract exists between the plaintiff and a third party; (2) the defendant knows of that contract; (3) the defendant intentionally interferes with that contract (and the interference is wrongful and without justification); (4) the third party breaches that contract; and (5) the plaintiff suffers

---

[11] Plaintiff's failure to respond constitutes abandonment of this claim, which is independent grounds for dismissal. *See Roberts v. Equian, LLC*, 793 F. Supp. 3d 643, 662 (D. Md. 2025) (collecting cases).

[12] Notably, however, the dismissal of the independent cause of action attempting to allege an injunction does not preclude Plaintiff from seeking injunctive relief as a remedy for their remaining causes of action. *See Dwoskin v. Bank of Am., N.A.*, 850 F. Supp. 2d 557, 573 (D. Md. 2012) (explaining dismissal of cause of action for injunction did not preclude plaintiff from later seeking injunction as a form of relief); *Fare Deals*, 180 F. Supp. 2d at 682 n.1. Thus, although Count IV is dismissed, Plaintiff may still seek an injunction as a remedy.

damages from the breach." *Lilly v. Balt. Police Dep't*, 694 F. Supp. 3d 569, 594 (D. Md. 2023). In this case, Nouveau contends that Plaintiff has not sufficiently alleged the second, third, and fifth elements of tortious interference under Maryland law. *See generally* (ECF No. 37-1 at 21–23). The Court addresses these elements in turn.

First, TK Elevator has sufficiently alleged that Nouveau had knowledge of Ms. Drzewiecki's Agreement with TK Elevator. Nouveau asserts that TK Elevator improperly relies on the unsupported allegation that Nouveau "knew or should have known" of the contract, and TK Elevator did not provide a copy of the Agreement until December 2024, *after* the alleged interference. (*Id.* at 21–22.) In Opposition, TK Elevator argues that it has sufficiently alleged that Nouveau hired Ms. Drzewiecki and it is common for salespeople in their industry to be subject to restrictive covenants. (ECF No. 41 at 13.) In Reply, Nouveau reiterates that TK Elevator's broad allegations of knowledge based "on information and belief" are insufficient. (ECF No. 44 at 9–10.)

As this Court has repeatedly recognized, however, a tortious interference claim is sufficiently alleged where a plaintiff alleges facts sufficient to support an inference of a defendant's knowledge. *See Lilly*, 694 F. Supp. 3d at 595 ("[T]his Court infers [defendant's] knowledge that the Contract existed between Plaintiffs and [third party], though the Amended Complaint fails to specify when [defendant] allegedly committed the interference or his knowledge at that time."); *Phreesia, Inc.*, 2022 WL 911207, at *14 ("[T]he Court can infer defendants' knowledge that the industry client was bound by customary confidentiality provisions."). TK Elevator has sufficiently alleged that Nouveau was "aware of" Ms. Drzewiecki's Agreement at all relevant times and that it provided Nouveau a copy of the

Agreement in December 2024.  (ECF No. 1 ¶¶ 106, 53.)  It has further alleged that Nouveau took no steps to remedy the alleged misappropriation and violation of the Agreement thereafter.  (*Id.* ¶¶ 53–54.)  Construing all facts and drawing all reasonable inferences to favor the plaintiff, TK Elevator alleged facts sufficient to support an inference of Nouveau's knowledge prior to December 2024 and its actual knowledge thereafter.[13]

Next, Plaintiff has adequately alleged Nouveau's intent to induce Ms. Drzewiecki to breach her Agreement.  "A showing of intentional interference requires 'both a tortious intent and improper or wrongful conduct.'"  *Ravensburger Interactive Media GmBH v. Bethesda Softworks, LLC*, Civ. No. AW-06-0950, 2006 WL 8457055, at *3 (D. Md. Oct. 6, 2006) (quoting *Macklin v. Robert Logan Assoc.*, 639 A.2d 112, 119 (Md. 1994)).  "A plaintiff may prove tortious intent by showing that the defendant intentionally induced the breach or termination of the contract in order to harm the plaintiff or to benefit the defendant at the expense of the plaintiff."  *Macklin*, 639 A.2d at 119.  This Court has recognized that intent may be alleged "circumstantially and by inference."  *Webb v. Green Tree Servicing, LLC*, Civ. No. ELH-11-2105, 2011 WL 6141464, at *7 (D. Md. Dec. 9, 2011) (quoting *Laws v. Thompson*, 554 A.2d 1264,

---

[13] Although Nouveau argues that this Court must disregard allegations of knowledge made "upon information and belief," *see, e.g.*, (ECF No. 44 at 10), not all of Plaintiff's allegations of knowledge are made upon information and belief, *see, e.g.*, (ECF No. 1 ¶¶ 4, 106).  As the U.S. Supreme Court has instructed, "courts must consider the complaint in its entirety . . . when ruling on Rule 12(b)(6) motions to dismiss . . . ."  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).  Moreover, as Judge Chasanow of this Court has carefully explained, "it is important to differentiate 'between a case in which pleading "upon information and belief" is used as an inadequate substitute for providing detail as to why the element is present in an action . . . [and] proper use of "upon information and belief," where a plaintiff does not have personal knowledge of the facts being asserted.'"  *Mann Bracken, LLP v. Exec. Risk Indem., Inc.*, Civ. No. DKC-15-1406, 2015 WL 5721632, at *7 (D. Md. Sep. 28, 2015) (quoting *Malibu Media, LLC v. Doe*, Civ. No. PWG-13-365, 2014 WL 7188822, at *4 (D. Md. Dec. 16, 2014)).  In this case, Plaintiff appropriately uses allegations "upon information and belief" to allege Defendant's knowledge because Plaintiff lacks access to—and, therefore, personal knowledge of— Nouveau's "documents and records."  *Cf. id.* at *7 (explaining allegations upon information and belief *not* appropriate where plaintiff had access to defendant's records and documents).

1271 (Md. 1989)).  "[W]hether particular conduct is proper or improper is a factual question to be determined on the basis of all the facts and circumstances."  *Macklin*, 639 A.2d at 119. For the purposes of addressing a motion under Rule 12(b)(6), detailed factual allegations of intentional and wrongful conduct are sufficient to allege this element of a tortious interference claim under Maryland law.  *See, e.g.*, *Ravensburger Interactive Media*, 2006 WL 8457055, at *3.

At this stage, TK Elevator has sufficiently alleged that Nouveau knew of the Agreement when Ms. Drzewiecki solicited TK Elevator's clients.  (ECF No. 1 ¶¶ 45, 56–57, 107–110.) Additionally, it has alleged that Nouveau failed to take steps to prevent Ms. Drzewiecki's solicitation—on Nouveau's behalf—of customers that fell within the scope of the Agreement's restrictive covenants even after Nouveau received a copy of the Agreement in December 2024.  (*Id.* ¶¶ 53–54.)  Construing all facts and drawing all inferences to favor Plaintiff, these facts are sufficient to allege Nouveau's intent to interfere with TK Elevator's business by authorizing Ms. Drzewiecki to violate her Agreement to Nouveau's benefit and at TK Elevator's expense.  *See Macklin*, 639 A.2d at 119; *Friedman & Fuller, P.C. v. Funkhouser*, 666 A.2d 1298, 1309 (Md. Ct. Spec. App. 1995) ("There can be no doubt that [defendant's] service of [plaintiff's] former clients inured to its benefit.").

Finally, TK Elevator has sufficiently alleged the damages element of tortious interference with contract because it has alleged that it lost the business of at least two customers that Defendants improperly solicited.  Loss of customers based on improper interference satisfies the damages element of a tortious interference with contract claim.  *See, e.g.*, *Friedman & Fuller*, 666 A.2d at 1309 (reversing grant of summary judgment to defendant where plaintiff alleged that it lost customers based on actions of former employee and his new

employer).  In this case, TK Elevator has alleged that its former client, "McPherson" concluded its contract with TK Elevator and retained Nouveau after Ms. Drzewiecki improperly solicited it on Nouveau's behalf. (ECF No. 1 ¶ 46.)  It further alleges that another former client, Waterview, "has since retained Nouveau after declining to continue its contract with TKE" based on Ms. Drzewiecki's improper solicitation. (*Id.* ¶ 47.)  Accordingly, Nouveau's Motion (ECF No. 37) is DENIED as to Count V.

### d. Count VI: Tortious Interference with Prospective Business as to Nouveau

"To state a claim for tortious interference with prospective business relations, a plaintiff must allege (1) intentional and willful acts; (2) calculated to cause damage to plaintiff; (3) done to cause damage and loss, without right or justifiable cause by defendant (which constitutes malice); and (4) damage." *Coastal Lab'ys, Inc. v. Jolly*, 502 F. Supp. 3d 1003, 1025 (D. Md. 2020) (citing *Press v. United States*, Civ. No. JKB-17-1667, 2018 WL 1211537 (D. Md. Mar. 8, 2018)); *accord K&K Mgmt., Inc. v. Lee*, 557 A.2d 965, 973 (Md. 1989).  "A plaintiff also must 'identify a possible future relationship which is likely to occur, absent the interference, with specificity.'" *Total Recon Auto Ctr., LLC v. Allstate Ins. Co.*, 705 F. Supp. 3d 510, 520 (D. Md. 2023) (quoting *Mixter v. Farmer*, 81 A.3d 631, 638 (Md. Ct. Spec. App. 2013)).  As Judge Bredar of this Court has previously recognized, "a tortious interference claim does not lie from the mere fact that a client or business partner has been persuaded to switch its business to that of a rival." *ClearOne II*, 756 F. Supp. 3d 30, 45 (D. Md. 2024).  Rather, "the defendant must accomplish the interference through improper means." *Settles v. Scott*, Civ. No. SAG-25-1838, 2025 WL 3466852, at *8 (D. Md. Dec. 3, 2025) (citing *Yuan v. Johns Hopkins Univ.*, 135 A.3d 519, 582 (Md. Ct. Spec. App. 2016)).  That is, a plaintiff must allege that the defendant's

conduct was "independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships." *Total Recon Auto Ctr.*, 705 F. Supp. 3d at 520 (quoting *Kaser v. Fin. Protection Mktg.*, 831 A.2d 49, 53 (Md. 2003)). In this case, Nouveau contends that TK Elevator has not identified prospective business relationships with sufficient particularity to state a claim. As explained below, however, TK Elevator has sufficiently alleged that Ms. Drzewiecki, acting as Nouveau's agent, wrongfully misappropriated Plaintiff's trade secrets to disrupt Plaintiff's prospective business relationships with McPherson and Waterview, among other customers.

As to the first element of this type of tortious interference claim, "[q]ualifying conduct includes 'violence or intimidation, defamation, injurious falsehood or other fraud, violation of criminal law, and the institution or threat of groundless civil suits in . . . bad faith.'" *Id.* (quoting *Alexander & Alexander v. B. Dixon Evander & Assocs.*, 650 A.2d 260, 271 (Md. 1994)). Additionally, this Court has previously recognized that misappropriation of trade secrets may constitute a wrongful act sufficient to satisfy the first element of tortious interference with prospective business. *See ClearOne II*, 756 F. Supp. 3d at 45 (granting summary judgment to plaintiff on tortious interference with prospective business based on misappropriation of trade secret). In this case, for the reasons discussed above, Plaintiff has sufficiently alleged that Ms. Drzewiecki acted on behalf of Nouveau and within the scope of her employment to misappropriate trade secrets to improperly solicit Plaintiff's customers. Indeed, Ms. Drzewiecki has already filed a Partial Answer in which she responds to Plaintiff's claim of tortious interference with prospective business relationships to the extent it alleges direct liability against her. (ECF No. 33 ¶¶ 113–121.)

Under the second element of tortious interference with prospective business relationships, a plaintiff must allege either "that the defendant intentionally induced the breach or termination of the contract in order to harm the plaintiff *or to benefit the defendant at the expense of the plaintiff*." *Macklin*, 639 A.2d at 119 (emphasis added). In this case, Plaintiff has sufficiently alleged that Defendants used misappropriated trade secret information to recruit McPherson, Waterview, and additional clients from TK Elevator to Nouveau. At this pleading stage, therefore, Plaintiff has sufficiently alleged that Defendants intentionally induced McPherson and Waterview to terminate or discontinue their contracts with Plaintiff and begin contracts with Nouveau. Put differently, TK Elevator has sufficiently alleged an intentional and willful act calculated to cause damage to it without right, which satisfies the first three elements of tortious interference with prospective business relationships.

As to the final element, Nouveau assert that Plaintiff has not sufficiently alleged existing business relationships that can satisfy the damages element of a cause of action for tortious interference. (ECF No. 37-1 at 24.) Specifically, it contends that by the time TK Elevator provided it the Agreement, TK Elevator had already lost the business of both McPherson and Waterview. (*Id.*) As explained above, however, Plaintiff has alleged facts sufficient to support an inference of Nouveau's knowledge of the misappropriation prior to December 2024, when Nouveau obtained actual knowledge of the Agreement. Thus, Plaintiff has sufficiently alleged that Nouveau is vicariously liable for Ms. Drzewiecki's alleged tortious interference with Plaintiff's business relationships with its existing and potential future customers. *See* (ECF No. 1 ¶¶ 89, 90, 96–98, 108). Plaintiff has specifically identified its business relationships with Waterview and McPherson by the name and address of both clients, which is sufficient to

allege the final element of a tortious interference claim under Maryland law. *See, e.g., ClearOne II*, 756 F. Supp. 3d at 45 (granting summary judgment to plaintiff who alleged defendant misappropriated its leads to benefit rival company); *Finley Alexander Wealth Mgmt, LLC v. M&O Mktg., Inc.*, Civ. No. GJH-19-1312, 2021 WL 1215769, at *19 (D. Md. Mar. 31, 2021) (concluding claim survived motion to dismiss where plaintiff alleged prospective customers declined plaintiff's services based on defendant's improper conduct). Construing all facts and drawing all inferences in the light most favorable to the plaintiff, TK Elevator has alleged facts sufficient to state a claim for tortious interference with prospective business relations against both Defendants. Nouveau's Motion (ECF No. 37) is DENIED as to Count VI.

### e. Count VII: Unfair Competition as to Nouveau

As Judge Bredar of this Court has recognized, "the scope of the tort of unfair competition under Maryland common law is extremely broad." *G.W. Aru, LLC v. W.R. Grace & Co.-Conn.*, 344 F.R.D. 446, 450 (D. Md. 2023). Maryland common law does not prescribe any specific elements of unfair competition and instead evaluates such claims under the "particular facts and circumstances" of each case. *Id.* (quoting *Balt. Bedding Corp. v. Moses*, 34 A.2d 338, 342 (Md. 1943)). Guiding this analysis is the underlying principle that "no one, especially a trader, is justified in damaging or jeopardizing another's business by fraud, deceit, trickery or unfair methods of any sort." *Id.* (quoting *Balt. Bedding Corp.*, 34 A.2d at 345). This Court has repeatedly recognized that allegations of misappropriation of confidential information or trade secrets are sufficient to support a claim of unfair competition. *See, e.g., Aarow Elec. Sols. v. Tricore Sys., LLC*, 693 F. Supp. 3d 525, 548–49, 545 (D. Md. 2023); *Hardwire, LLC v. Ebaugh*, Civ. No. JKB-20-0304, 2020 WL 5077469, at *6 (D. Md. Aug. 27, 2020)

(recognizing allegations of wrongful use and disclosure, including misappropriation of trade secrets, were sufficient to allege unfair competition at pleading stage); *Brightview Grp., LP v. Teeters*, 441 F. Supp. 3d 115, 135 (D. Md. 2020) (holding plaintiff likely to succeed on unfair competition claim where it alleged defendant "leveraged access to [plaintiff's] sensitive . . . business information in an effort to 'jump start'" its own business). As explained above, TK Elevator has alleged that Ms. Drzewiecki and Nouveau wrongly leveraged its confidential information to recruit its clients to Nouveau in violation of federal and state statute and Ms. Drzewiecki's Agreement. Moreover, it has alleged that Nouveau has allowed Ms. Drzewiecki to continue to recruit clients to Nouveau despite its knowledge that her conduct violates the Non-Solicitation and Confidentiality Provisions of her Agreement with TK Elevator. This is sufficient to state a claim of unfair competition against Nouveau under Maryland law, and Nouveau's Motion (ECF No. 37) is DENIED as to Count VII.[14]

## II.    Motions to Stay Discovery and Motion for Surreply

Also pending before this Court are Nouveau's Motion to Stay Discovery Pending Resolution of its Motion to Dismiss (ECF No. 55); Ms. Drzewiecki's Motion to Join in Part Defendant Nouveau's Motion to Stay (ECF No. 56); and Plaintiff's Leave to File Surreply in Opposition to Defendant's Motion to Stay Discovery (ECF No. 61). Nouveau's Motion to

---

[14] Nouveau raises the economic loss doctrine to argue that the underlying claims against Ms. Drzewiecki in Counts VI and VII must fail such that those claims necessarily fail to the extent they allege vicarious liability against Nouveau. (ECF No. 37-1 at 24-25.) To support this argument, Nouveau cites a case in which Judge Hollander of this Court determined that negligent supervision claims against a defendant could not proceed where the underlying claim against that defendant's employee had been dismissed. (ECF No. 37-1 at 25 (citing *Strickland v. Carroll Cnty., Md.*, Civ. No. ELH-11-0622, 2012 WL 401075, at *30 (D. Md. Feb. 7, 2012)). In this case, however, Ms. Drzewiecki has filed a partial Answer (ECF No. 33) as to the claims against her in Counts VI an VII such that those claims remain pending. Accordingly, any argument as to the economic loss doctrine in this case is not appropriate for consideration at this time and instead must await further discovery.

Stay Discovery (ECF No. 55) and Ms. Drzewiecki's Motion to Join in Part Nouveau's Discovery Motion (ECF No. 56) are now MOOT because this Court has adjudicated Nouveau's Motion to Dismiss in the instant Memorandum Opinion.  Relatedly, Plaintiff's Motion for Leave to File Surreply (ECF No. 61) is rendered moot to the extent that the underlying Motions to Stay Discovery (ECF Nos. 55, 56) are moot.  Accordingly, Nouveau's Motion to Stay Discovery (ECF No. 55) is DENIED AS MOOT; Ms. Drzewiecki's Motion to Join in Part Nouveau's Motion (ECF No. 56) is DENIED AS MOOT; and Plaintiff's Motion for Leave to File Surreply (ECF No. 61) is DENIED AS MOOT.

## CONCLUSION

For the reasons stated above, Nouveau's Motion to Dismiss (ECF No. 37) is GRANTED IN PART and DENIED IN PART and Ms. Drzewiecki's Motion to Dismiss (ECF No. 38) is GRANTED IN PART and DENIED IN PART.  Specifically, Defendants' Motions (ECF Nos. 37, 38) are GRANTED as to Count IV, which is DISMISSED WITH PREJUDICE as to both Defendants.  Defendants' Motions (ECF Nos. 37, 38) are DENIED as to all other claims.  Counts I, II, III, V, VI, and VII shall proceed.  Defendant Nouveau shall file its Answer to all claims against it within fourteen (14) days of the date of this Memorandum Opinion and accompanying Order.  Similarly, within fourteen (14) days of the date of this Memorandum Opinion and accompanying Order, Ms. Drzewiecki shall file her Answer to any remaining claims against her not addressed in her Partial Answer (ECF No. 33).

Nouveau's Motion to Stay Discovery (ECF No. 55) is DENIED AS MOOT; Ms. Drzewiecki's Motion to Join in Part Nouveau's Motion to Stay Discovery (ECF No. 56) is DENIED AS MOOT; and TK Elevator's Motion for Leave to File Surreply (ECF No. 61) is DENIED AS MOOT.

A separate Order follows.

Date: February 27th, 2026

/s/
_____
Richard D. Bennett
United States Senior District Judge